IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ESHED J.L. ALSTON, | § | |
| | § | |
| Plaintiff Below, | § | No. 382, 2014 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for New Castle County |
| GWEN J. PRITCHETT, | § | C.A. No. N12C-11-086 |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: January 9, 2015
Decided: February 26, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VALIHURA**, Justices.

## <u>ORDER</u>

This 26th day of February, 2015, upon consideration of the briefs and record on appeal as well as the appellant's motion to stay, it appears to the Court that:

(1)     The plaintiff-appellant, EShed Alston, filed this *pro se* appeal from a June 19, 2014 Superior Court order granting a motion to enforce a settlement ("Motion to Enforce Settlement").  On January 8, 2015, Alston moved for an extension or stay of the submission of this matter for decision on the briefs as of January 9, 2015.  We deny the motion to stay and conclude there is no merit to the appeal.

(2)     On November 12, 2012, Alston filed a complaint in the Superior Court against the defendant-appellee, Gwen Pritchett.  Alston alleged that he

suffered injuries in a car accident caused by Pritchett's negligence and sought compensatory damages. Alston was represented by counsel in the Superior Court proceedings.

(3) A mediation was held on April 4, 2014. During the mediation, the parties executed a settlement agreement ("Settlement Agreement"). The Settlement Agreement provided that, in exchange for an executed release and stipulation of dismissal of all claims with prejudice, Pritchett would pay Alston $17,800. The Settlement Agreement also provided that Alston was responsible for all outstanding medical expenses and/or health insurance liens, exclusive of personal injury protection.

(4) In an affidavit dated April 5, 2014, Alston informed his counsel that he rejected the signed settlement agreement based on his concerns, which were raised at the mediation, about insurance companies making lower settlement offers to minorities and the Superior Court judge presiding over his case. Pritchett's counsel provided Alston's counsel with a release for Alston to execute and a check for $17,800. Alston's counsel informed Pritchett's counsel of Alston's unwillingness to proceed with the settlement.

(5) On May 14, 2014, Alston's counsel informed the Superior Court that Alston was unwilling to proceed with the Settlement Agreement. Pritchett filed the Motion to Enforce Settlement on June 2, 2014. Exhibits to the motion included

2

Alston's April 5, 2014 affidavit and another Alston affidavit dated April 9, 2014. In the April 9, 2014 affidavit, Alston expressed displeasure with his counsel's use of his former name in pleadings filed in the Superior Court.

(6) The Superior Court held a hearing on the Motion to Enforce Settlement on June 19, 2014.[1] Alston attended the hearing. The Superior Court judge indicated that she had read the parties' papers, including the Motion to Enforce Settlement and Alston's affidavits, and asked Alston if there was anything else he wished to add to the written submissions. Alston submitted a document regarding his complaints about his counsel.

(7) In response to the Superior Court's inquiries, Alston stated that he had attended the mediation with counsel and that his signature appeared on the Settlement Agreement. Alston also stated that what occurred was reflected in his submissions and that he stood on his briefs. The Superior Court took the matter under advisement. Later that day the Superior Court granted the Motion to Enforce Settlement. This appeal followed.

(8) Briefing was completed on November 18, 2014 and this matter was submitted for decision on the briefs as of January 9, 2015. On January 8, 2015, Alston filed an amended motion for an extension or stay of the proceedings and

---

[1] The Motion to Enforce Settlement was heard and decided by a different Superior Court judge than the judge assigned to the case.

3

another document in support of the motion for an extension or stay of the proceedings.[2] The grounds for an extension or stay of the submission of this matter for decision are unclear, but Alston seems to contend that an extension or stay is necessary due to alleged misconduct by the Office of Disciplinary Counsel and the administration of Governor Markell. We have considered Alston's contentions and see no basis for extending or staying submission of this matter for decision.

(9) On appeal, Alston's arguments regarding the Superior Court's order granting the Motion to Enforce Settlement may be summarized as follows: (i) he timely rejected the Settlement Agreement; (ii) his former counsel was ineffective and engaged in misconduct; (iii) the Superior Court ignored his documents, which were superior to the Motion to Enforce Settlement filed by Pritchett's counsel; (iv) the Settlement Agreement was the result of fraud, duress, and coercion; and (v) he was the victim of collusion, conspiracy, and racial bias by his former counsel, opposing counsel, and the Superior Court.[3]

---

[2] On January 5, 2015, Alston filed a 55 page document that was struck as a nonconforming filing under Supreme Court Rule 34.

[3] Alston also makes a number of other claims, mostly relating to alleged discrimination by former governors, various agencies, and courts inside and outside of Delaware, that are not related to the Motion to Enforce Settlement or this appeal.

(10)  We review questions of law *de novo*.[4] We review questions of fact for abuse of discretion and accept a trial judge's findings unless they are clearly wrong.[5] "Delaware law favors settlements and treats them as binding contracts."[6] Like any other contract, a settlement agreement may be invalidated under certain circumstances such as fraud, illegality, duress, or undue influence.[7] Alston does not dispute that he signed the Settlement Agreement or contend that the Settlement Agreement fails to reflect the parties' understanding as of April 4, 2014.

(11)  Contrary to Alston's suggestion, his rejection of the Settlement Agreement on April 5, 2014 does not render the agreement unenforceable. Alston claims he timely rejected the Settlement Agreement, but cannot identify any language in the agreement allowing one of the parties to reject the agreement within a certain time period. If the parties had wished to allow for rejection of the agreement within a certain time period, then they could have included such a provision in the agreement. They did not do so.

---

[4] *Reserves Dev. LLC v. Crystal Properties, LLC*, 986 A.2d 362, 367 (Del. 2009).

[5] *Id.*

[6] *Crescent/Mach I Partners, L.P. V. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008) (citing *Rowe v. Rowe*, 2002 WL 1271679, at*3 (Del. Ch. May 28, 2002)).

[7] *Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 17, 1992). *See also Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010) (recognizing Delaware courts will only set aside clear and unambiguous release when it was product of fraud, duress, coercion, or mutual mistake).

(12) Alston also claims in his reply brief that his counsel told him the mediation was not binding. We decline to address this claim as it was not fairly raised in Alston's opening brief.[8] We also note that Alston does not claim he was told that a settlement agreement executed by the parties at a mediation is not binding on the parties.

(13) Alston contends that the Settlement Agreement should be invalidated based upon his former counsel's alleged misconduct and ineffective assistance. Most of these claims appear to be based on the appearance of Alston's former name in the caption of the complaint filed by Alston's former counsel and Alston's dissatisfaction with his former counsel's handling of the Motion to Enforce Settlement.[9] Alston fails to explain how this alleged misconduct had any bearing on Alston's execution of the Settlement Agreement or the enforceability of that agreement. Alston does not claim that his former counsel was ineffective or engaged in misconduct during the April 4, 2014 mediation.

(14) As to the Motion to Enforce Settlement, the record reflects that the Superior Court received documents reflecting Alston's position and Alston had the

---

[8] Supr. Ct. 14(c) ("Appellant shall not reserve the Appellant shall not reserve material for reply brief which should have been included in a full and fair opening brief."); *Lampkins v. State*, 2010 WL 4735029, at *1 n.5 (Del. Nov. 22, 2010) (declining to address claim raised for first time in reply brief).

[9] Alston's counsel did not file a response to the Motion to Enforce Settlement or argue the merits of Alston's position at the June 19, 2014 hearing.

opportunity to present his arguments at the June 19, 2014 hearing. There is no indication that Alston sought a continuance of the June 19, 2014 hearing in order to have more time or obtain new counsel to oppose the Motion to Enforce Settlement. Alston's claims regarding his former counsel do not establish a basis for invalidating the Settlement Agreement. If Alston wishes to pursue disciplinary sanctions or monetary claims against his former counsel, there are other avenues available to him.

(15) Alston next contends that the Superior Court ignored his superior submissions in granting the Motion to Enforce Settlement. The record does not support this contention. The June 19, 2014 hearing transcript reflects that the Superior Court reviewed Alston's affidavits and accepted another submission from Alston at the hearing. The Superior Court's subsequent granting of the Motion to Enforce Settlement indicates that the Superior Court did not find Alston's arguments against enforcement of the settlement persuasive, not that the Superior Court ignored Alston's submissions. As to the alleged superiority of Alston's submissions, the preparation of documents by a party does not make those documents inherently superior to documents prepared by a party's lawyer as Alston contends. Alston's contention that his status was superior because he entered a general appearance and Pritchett's counsel entered a special appearance is factually incorrect and not legally supported.

7

(16) Alston's conclusory and unsupported claims of fraud, duress, and coercion do not establish a basis for invalidating the Settlement Agreement. Most of these claims are based on the same alleged misconduct by Alston's former counsel that we have already addressed. To the extent Alston tries to claim he was the victim of duress or coercion at the April 4, 2014 mediation, he does not identify anything in the record supporting this claim. According to his April 5, 2014 affidavit, Alston rejected the Settlement Agreement after signing it due to his concerns, which he raised at the mediation, about insurance companies making lower settlement offers to minorities and the Superior Court judge presiding over his case. This affidavit does not include any claims that Alston was subjected to coercion or duress at mediation. Instead, the affidavit reflects that Alston felt comfortable expressing certain concerns at the mediation and then chose to execute the Settlement Agreement. Alston's subsequent second thoughts are not indicative of duress or coercion.

(17) Finally, the record does not support Alston's claims that the granting of the Motion to Enforcement Settlement was the result of collusion, conspiracy, or racial bias by his counsel, opposing counsel, and the Superior Court. We conclude that the Superior Court did not err in granting the Motion to Enforce Settlement.

NOW, THEREFORE, IT IS ORDERED that the January 9, 2015 motions are DENIED and the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


/s/ Karen L. Valihura
Justice